## SPATES v. WELLS BROTHERS.*

MASTER AND SERVANT; FELLOW SERVANTS; ASSUMPTION OF RISK; NEGLI-GENCE.

1. While it is the duty of a master to provide reasonably safe places in which and structures upon which his servants are to work, he cannot be expected, and is not required, to keep a building which they are employed in erecting in a safe condition at every moment of their work, so far as its safety depends upon the due performance of that work by them and their fellows.

2. If an act is done in the discharge of some positive duty of the master to the servant, then negligence in the performance of the act is negligence of the master, notwithstanding that it was performed through another servant. (Citing *Carter* v. *McDermott,* 29 App.

---

* *Master and Servant—Safe Place to Work—Changing Conditions.* —For cases passing upon the applicability of rule as to safe place where the conditions of work are changing, see notes to *Citrone* v. *O'Rourke Engineering Constr. Co.* 19 L.R.A.(N.S.) 340, and *Smith* v. *North Jellico Coal Co.* 28 L.R.A.(N.S.) 1267.

*Same—Fellow Servants.*—As to master's nonliability for coservant's negligence in respect to dangers arising from changing condition of building or other structures while in course of erection or repair, see note to *Lafayette Bridge Co.* v. *Olsen,* 54 L.R.A. 139.

D. C. 145; *Collins* v. *John W. Danforth Co.* 36 App. D. C. 592, and *Thompson-Starrett Co.* v. *Wilson*, 39 App. D. C. 211.)

3. In an action by a former servant against his master to recover damages for personal injuries received while in the service of the master, the servant must affirmatively establish negligence on the part of the master. (Citing *Thompson-Starrett Co.* v. *Warren*, 38 App. D. C. 310.)

4. Where a carpenter, while engaged in setting trim in one of the rooms of a building in course of construction, was injured by the falling of a frame which had been so placed on the floor of the room that morning that it had nothing to support it except its base, and it appears that it was so placed by another carpenter, who, however, had been detailed by the superintendent of construction of the contractor to distribute trim to the carpenters in the various rooms, and was engaged in that duty alone, the trial court properly directs a verdict for the defendant in an action by the carpenter injured against the contractor, on the grounds (1) that the accident occurred through the negligence of a fellow servant, and (2) the plaintiff had assumed the risk of such an injury. (Mr. Chief Justice Shepard dissenting.)

No. 2773.    Submitted April 27, 1915.    Decided May 24, 1915.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on a verdict directed by the Court, in an action to recover damages for alleged personal injuries.           *Affirmed.*

The COURT in the opinion stated the facts as follows:

Appeal from a judgment in the supreme court of the District upon a directed verdict for the appellee, Wells Brothers, a corporation defendant below, in an action by the appellant, Charles A. Spates, for the recovery of damages for personal injuries resulting from the alleged negligence of the defendant, a general contractor, for whom plaintiff was working as a carpenter in one of the rooms of the Riggs Office Building in this city.

At the time of the accident the plaintiff had been working on the above building about a month. A Mr. William Smith represented the defendant as superintendent in charge, and all

mechanics, carpenters, and other workmen in the direct employ of the defendant were under his supervision and control. A carpenter by the name of Matthews, who had been working for the defendant upon the building, was directed by Mr. Smith to take charge of the distribution of trim and other material for the carpenters. In obedience to this order, Mr. Matthews sorted out the trim for certain rooms and supervised its distribution. Among the rooms in which trim was placed was the room where the plaintiff was injured. There were three untrimmed door openings in this room, and trim had been placed in the room that morning for each of those openings. Plaintiff removed a piece of trim "from against the north wall to his trestles" for the purpose of fitting it to a door opening. This trim was about 8 feet long by 4 feet wide, and consisted of two upright or side pieces, to which was attached a top piece, the whole forming the trim around the top and two sides of the door. To fit the trim it is necessary to set it against the door and temporaily nail and mark it. It is then taken down and placed on the trestle and sawed to the right height. The trim, according to the plaintiff's testimony, "will stand up very plumb and keep its equilibrium without having these nails in there," but the nails are rendered necessary by reason of the trim being a little out of square. In about fifteen minutes after the plaintiff had commenced working in this room, and while he was 7 or 8 feet from the west wall, a piece of trim which was standing opposite a window in that wall fell and injured him. Mr. Matthews testified that this piece of trim "was placed against the wall over the window with the incline against the wall; it was not set upright against the wall, but placed about a foot from the wall, to avoid scarring the wall." He further testified that he "was distributing trim and looking after the trim. * * * He was there to look after the trim, but not the carpenters; had nothing to do with the carpenters; he was there to get the trim in shape so that the carpenters could use it; not to help them; when he stopped using tools he did not have anything to do with the carpenters, and they had nothing to do with him; if they needed anything they would call him and

ask him; he was there to look after the wants of the carpenters, and the laborers were there to carry out his instructions in looking after the wants of the carpenters."

The court, over the objection and exception of the plaintiff, ruled that the accident was caused by the negligence of a fellow employee, and hence that the plaintiff could not recover.

*Mr. Creed M. Fulton* and *Mr. M. J. Fulton* for the appellant.

*Mr. W. J. Lambert, Mr. R. H. Yeatman, Mr. B. S. Minor,* and *Mr. L. R. Mason* for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

While it is the duty of a master to provide reasonably safe places in which and structures upon which his servants are to work, he cannot be expected, and is not required, to keep a building which they are employed in erecting "in a safe condition at every moment of their work, so far as its safety depends upon the due performance of that work by them and their fellows." *Armour* v. *Hahn,* 111 U. S. 313, 318, 28 L. ed. 440, 441, 4 Sup. Ct. Rep. 433. The plaintiff in that case was a carpenter, and his injury was caused by the giving way of a piece of timber which had been placed in the brick wall of the building in process of construction. The court observed that if, at the time of the accident, this piece of timber was insecure, it was either by reason of the risks ordinarily incident to the state of things in the unfinished condition of the building, "or else by reason of some negligence of one of the carpenters or bricklayers, all of whom were employed and paid by the same master, and were working in the course of their employment at the same place and time, with an immediate common object, the erection of the building," and therefore that, "within the strictest limits of the rule of law upon the subject," they were fellow servants.

In *Northern P. R. Co.* v. *Hambly,* 154 U. S. 349, 38 L. ed. 1009, 14 Sup. Ct. Rep. 983, it was held that a day laborer in

the employ of a railroad company, and under the immediate direction of a section boss or foreman on a culvert of the company's line of road, was a fellow servant of the conductor and engineer operating a passenger train, and through whose negligence the plaintiff was injured. The court laid down the following test of liability: "If the departments of the two servants are so far separated from each other that the possibility of coming in contact, and hence of incurring danger from the negligent performance of the duties of such other department, could not be said to be within the contemplation of the person injured, the doctrine of fellow service should not apply." The court further observed that "to hold the principal liable whenever there are gradations of rank between the person receiving and the person causing the injury, or whenever they are employed in different departments of the same general service, would result in frittering away the whole doctrine of fellow service."

Of course, if an act is done in the discharge of some positive duty of the master to the servant, then negligence in the performance of the act is negligence of the master, notwithstanding that it was performed through another servant. *Carter* v. *McDermott,* 29 App. D. C. 145, 10 L.R.A.(N.S.) 1103, 10 Ann. Cas. 601; *Collins* v. *John W. Danforth Co.* 36 App. D. C. 592; *Thompson-Starrett Co.* v. *Wilson,* 39 App. D. C. 211; *Baltimore & O. R. Co.* v. *Baugh,* 149 U. S. 386, 37 L. ed. 780, 13 Sup. Ct. Rep. 914; *Northern P. R. Co.* v. *Herbert,* 116 U. S. 647, 29 L. ed. 758, 6 Sup. Ct. Rep. 590.

In the light of the foregoing, we will now examine the facts of the present case, having in mind that the claim of negligence is based solely upon the manner in which the piece of trim in question was placed in the room where plaintiff was to work. Admittedly, this piece of material was to be used in the construction of the building. Its position was extremely temporary and transitory. The employee who carried it into the room and the employee who was then to work upon it were engaged in the same common object, the construction of the building, and their duties were intimately connected. Supposing that the plaintiff had

been at work shingling a roof for the defendant, and the defendant had detailed another carpenter to take charge of the work of distributing materials with which to do the work, and that one of the workmen, in carrying a bunch of shingles, had carelessly dropped them on the plaintiff, thereby throwing him from the roof and causing him injury, could it be contended that under such a set of facts the plaintiff would be liable? Or, supposing that Mr. Matthews in the present case, after plaintiff had placed a piece of trim on his trestles, had carelessly knocked it off as he (Matthews) was carrying in another piece, and had thereby caused an injury to plaintiff's foot, could it reasonably be contended that the common employer would be liable? The injury in each of those cases clearly would have been caused by the carelessness of a fellow servant, and not by any negligence of the employer. In the present case the employer furnished a proper room, proper materials, and was not negligent in selecting its employees. It directed one set of employees to carry around and conveniently place those materials, and another set of employees, including the plaintiff, to work upon them. We think the conclusion irresistible that the two sets of employees were fellow servants within the rule laid down by the Supreme Court of the United States.

Negligence must be affirmatively established by the employee. *Thompson-Starrett Co.* v. *Warren*, 38 App. D. C. 310, 318; *Patton* v. *Texas & P. R. Co.* 179 U. S. 658, 663, 45 L. ed. 361, 364, 21 Sup. Ct. Rep. 275. In the present case the evidence tended to show that the piece of trim on the morning of the accident was set up on the floor about a foot from the wall, and that it inclined toward but did not touch the wall. In other words, as observed by the trial court, it had "nothing to support it except its own base." The evidence is silent as to whether it was placed in a manner different from that in which the other two pieces were placed in the same room. But if this piece was negligently placed, no one was in a better position to appreciate the fact than the plaintiff when he commenced work in the room. He was a skilled carpenter and, working as he did within a few feet of this trim, could not help observing, if he paid any atten-

tion to his surroundings, how it was placed and appreciating to the fullest extent any danger incident thereto. It was not a complex danger; nor was he hurried, as was the plaintiff in *Duvall* v. *Philadelphia, B. & W. R. Co. ante,* 395. There was nothing in the room except those pieces of trim, and if this particular piece was placed in an unusual position, that fact should have attracted plaintiff's attention immediately; and if, on the other hand, the position in which it was placed was the usual one, he certainly knew when he went into the room that it was liable to fall. In either case he must be presumed to have assumed the risk.

The judgment must be affirmed with costs.      *Affirmed.*

Mr. Chief Justice SHEPARD dissenting:

I am compelled to dissent from the opinion and judgment in this case. In my judgment Matthews was not a fellow servant of plaintiff. It was the duty of the corporation to place the trim of the doors and windows in the room for the carpenters to set in place. Plaintiff was assigned to fix up the trim in a certain door. Matthews was performing the duty of the corporation, and his negligence in performing it was its negligence. The trim which fell and injured the plaintiff was for a window which it was not his duty to work on. It was so negligently set up straight against the wall that its fall might have been occasioned by an ordinary shaking of the floor, or probably by a gust of wind through the open window. Plaintiff was not called on to notice its dangerous condition. Its fall was not due to his negligence, and the corporation should be held responsible for his injuries. At least, the question of negligence and contributory negligence should have been submitted to the jury.

The duty of the master to furnish a safe place and appliances for work is laid down in the following cases: *McCauley* v. *Southern R. Co.* 10 App. D. C. 560, 564; *Butler* v. *Frazee,* 25 App. D. C. 392; *Hough* v. *Texas & P. R. Co.* 100 U. S. 213, 218, 25 L. ed. 612, 615; *Northern P. R. Co.* v. *Herbert,* 116 U. S. 642, 648, 29 L. ed. 755, 758, 6 Sup. Ct. Rep. 590.

There are many other cases to the same effect, holding that where the duty is one owing by the master, and he intrusts it to the performance of a servant or agent, the negligence of such servant or agent is the negligence of the master. As the master is charged with the duty of providing safe and suitable appliances for the servant, and intrusts such a duty to an employee, such employee represents the master, and his negligence in such case is the negligence of the master.